# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **CABINET DISCOUNTERS, INC,** | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: PWG-16-1887 |
| **ALEXANDER SERKISIAN d/b/a** | * | |
| **KITCHEN, BATH & FLOORS,** *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Cabinet Discounters filed this action against Defendants Alexander Serkisian, d/b/a Kitchen, Bath & Floors, and Cabinets Discounters, Inc. under the Lanham Act, 15 U.S.C. §§ 1114, 1125, and Maryland law for injunctive relief and statutory damages, alleging that Defendants used the name "Cabinet*s* Discounters" in commerce, when Plaintiff holds the registered trademark for the name "Cabinet Discounters." ECF No. 1 (emphasis added to distinguish names). Defendants did not answer or otherwise respond, and I granted in part Plaintiff's Motion for Default Judgment. Judgment 1, ECF No. 15. I found that Plaintiff established Defendants' liability under the Lanham Act for trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, and false advertising, as well as their liability under Maryland law for unfair competition and passing off.

I also found, however, that while Plaintiff is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c)(2), they failed to show entitlement to the $1 million in statutory damages

requested. I denied that request without prejudice to filing an additional memorandum that included factual and legal support for the amount requested. Plaintiff timely filed a memorandum to support its request for $1 million in statutory damages, Pl.'s Suppl. Mem., ECF No. 17, and a Motion for Attorney's Fees and Costs, with exhibits showing its billing records in this case, ECF Nos. 16, 16-1. I find that Plaintiff's request for $22,332.79 in attorney's fees and costs is reasonable, but that $1 million in statutory damages would result in an excessive award to the Plaintiff and must be reduced.

## I.    Statutory Damages

The Lanham Act provides for statutory damages for willful use of a counterfeit mark, in the amount of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2). Pursuant to this provision, "the Court has broad discretion to fashion a statutory award based on the particular facts of the case and general principles of fairness." *Chanel, Inc. v. Banks*, 2011 WL 121700, at *7 (quoting *Larsen v. Terk Tech. Corp.,* 151 F.3d 140, 149–50 (4th Cir. 1998)). These damages "are intended to deter wrongful conduct, and may be particularly appropriate in cases of default judgment because of non-disclosure by the infringer." *Union of Orthodox Jewish Congregations of Am. v. The Wilder Spice Co.*, No. CCB-07-3122, 2008 WL 4372012, at *1 (D. Md. Sept. 10, 2008) (citations omitted).

"While the Court accepts as true all well-pleaded factual allegations of the Complaint, it does not accept plaintiff's calculation of damages." *Chanel*, 2011 WL 121700, at *14 (citing Charles A. Wright, *et al*., 10A Fed. Prac. & Proc. § 2688, at 58–59). The factors that the Court considers in performing its own calculation of statutory damages include, "*inter alia:* the defendant's profits, the plaintiff's lost profits, the defendant's willfulness, the size of defendant's

counterfeiting operation, the efforts to mislead and conceal, and the need to deter the defendant and others." *Id.* at *12. In *Chanel*, to calculate statutory damages, the plaintiff attempted to establish a "baseline figure" that approximated actual damages and then trebled that amount. *See id.* at *7–8 (noting that treble damages, which are mandatory except under extenuating circumstances, "compensate plaintiffs for financial loss and damage to their goodwill, as well as . . . deter and punish defendants"); *see also* 15 U.S.C. § 1117(b)(1) (providing for treble damages for intentional use). This approach reflects the fact that "a statutory damages award should 'bear[ ] some relation' to what a plaintiff may have gotten based on an actual damages calculation whenever possible." *Chanel*, 2011 WL 121700, at *8 (quoting *Bly v. Banbury Books*, 638 F. Supp. 983, 987 (E.D. Pa. 1986)). "[T]he Court must never use its broad discretion in fashioning a statutory remedy to result in a windfall for the plaintiff." *Id.* at *10.

In *Chanel*, this Court "appreciate[d] that [the] defendant's failure to respond to the lawsuit . . . deprived plaintiff of information regarding plaintiff's actual damages or defendant's profits," but found that "plaintiff's $6,638.33 substitute marker," arrived at "by calculating the potential gross sales revenue of defendant's entire inventory," was "too speculative and imprecise to be credited." *Id.* at *9. The Court reasoned that, "[w]ithout information on the price of similar Chanel goods—and even with the price of similar goods—it is impossible to know what actual damages Chanel incurred as a result of defendant's counterfeit sales," as "not even gross revenue sales" were known. *Id.* It also observed that the plaintiff had "presented no evidence regarding gross sales and only advocate[d] an assumption that the defendant sold all of her inventory over the period of her business." *Id.* at *13.

Plaintiff has cited three cases from other districts in support of its request for substantial statutory damages. Pl.'s Suppl. Mem. 3-4. In *Illinois Tool Works, Inc. v. Hybrid Conversions,*

*Inc.*, the defendants were selling counterfeit welding torches that were a safety hazard, unlike the plaintiff's products, because they leaked gas and started fires. 817 F. Supp. 2d 1351, 1354 (N.D. Ga. Aug. 29, 2011). The court denied the plaintiff's request for $2 million in statutory damages for each of the two infringed marks, reasoning that "[a] statutory maximum damages award should be reserved for trademark infringement that is particularly egregious, involves large amounts of counterfeit goods, or is otherwise exceptional," and "[a]lthough egregious, th[e] case [before it] involved only a relatively small number of counterfeit sales," which did "not justify a maximum statutory damages award." *Id.* at 1356. The court did "find, however, that a significant statutory damages award [was] warranted," and awarded statutory damages of $1.5 million, emphasizing the fact that the defendants were selling a counterfeit product that was potentially dangerous to the public. *Id.* ("Moreover, and most importantly, defendants marketed and sold counterfeit items that posed a risk to public safety. . . . Not only does the risk inherent in such goods pose an even greater threat to the goodwill associated with the trademark registrant's mark, it also threatens the public with physical harm."). Though the infringement in the case pending before me was willful, it did not amount to the egregiousness shown in *Illinois Tool Works*, given that there was no danger to the public here. *See id.*

Plaintiff also cites *Citigroup, Inc v. Chen Bao Shui*, 611 F. Supp. 2d 507, 509 (E.D. Va. Feb. 24, 2009), which involved a provision of the Lanham Act that is not implicated here, 15 U.S.C. § 1117(d). There, the plaintiff claimed that the defendant used a domain name that was identical to or confusingly similar to its own famous trademarks. 611 F. Supp. 2d at 509–10. The plaintiff sought statutory damages under § 1117(d), applicable to use of trademarks in domain names, which has a statutory maximum that is one-tenth ($100,000) the amount Plaintiff asks the Court to award in this case. *Id.* The court concluded that the "Defendant's violative use

4

ha[d] been established as sufficiently willful, deliberate, and performed in bad faith to merit the maximum statutory award of $100,000 and an award of attorneys' fees." *Id.* at 513. Given that the maximum statutory award here is ten times greater, I am not persuaded that *Citigroup* supports a substantial statutory damages award of the magnitude sought by Plaintiff in this case. *See id.*

In *Kobe Japanese Steak House of Florida, Inc. v. XU, Inc.*, the plaintiffs sought $2 million in statutory damages for trademark infringement. No. 14-490-T-23MAP, 2014 WL 6608967, at *4 (M.D. Fla. Nov. 20, 2014). The court observed that the facts did not "involve[e] a large trademark counterfeiting operation that would warrant a statutory award near the maximum end of the applicable range," but the defendant had infringed willfully and "ha[d] chosen to default rather than to cooperate in providing records from which Plaintiff and the Court [could] assess the extent of the infringement." *Id.* at *5. Yet, the plaintiff failed to submit evidence regarding any of the other factors the court used to determine statutory damages, such as the defendant's savings and profits by virtue of infringing, the plaintiff's lost revenue, and the value of the trademark. *Id.* Consequently, the court was forced to fashion a damages award from plaintiff's estimated advertising expenditures. *Id*. at *5–6. In order to do this, the court accepted the estimate of $1 million dollars spent on advertising over 30 years of business and calculated that the plaintiff spent approximately $640 on advertising each week. It then multiplied $640 by the number of weeks that the defendant willfully infringed upon the plaintiff's trademark (63), and reached an amount of $40,320. *Id.* at *6. The court then increased this award to $100,000 and found that amount sufficient to compensate plaintiffs as well as "to deter future misconduct." *Id.*

Here, as in *Kobe*, Defendants' willfulness has been established, their refusal to participate has prevented Plaintiff from developing information necessary to calculate its damages accurately, and there is a significant need to deter Defendants and others from similar conduct in the future. In Plaintiff's view, because "the amount of [Plaintiff's] customer expenditures and size of Plaintiff's business are non-trivial," an award of $1 million is proper in this case. Pl's Suppl. Mem. 1–2. Plaintiff also argues that, given "Defendants' size and the relatively large per customer spending," based on a price quote, website prices, and an advertisement, "the amounts involved are not trivial." *Id.* at 2. However, online price quotes are not indicative of actual sales or revenues.

While "courts have discretion to accept indirect or circumstantial evidence of sales volume where the infringing party fails to provide evidence of its actual sales volume," here, as in *Chanel*, "not even gross sales revenues are known." *See Chanel*, 2011 WL 121700, at *9. Rather, Plaintiff estimates that Defendants may have diverted twenty-five of its customers each year, each of which would have spent approximately $7,000. *See* Pl.'s Suppl. Mem. 2. On this basis, Plaintiff asserts that it suffered a gross revenue loss of $175,000. Plaintiff provided evidence that "typically Plaintiff's profits from sales meet or exceed 30%," such that a gross revenue loss of $175,000 amounts to an annual profit loss of $52,000. *See* Mikk Aff. ¶ 6. Thus, based purely on evidence of its own profits, Plaintiff may have lost profits of $104,000 over the two years that Defendants willfully infringed on Plaintiff's trademarks, due to Defendants' diversion of its customers. *See* Pl.'s Suppl. Mem. 2. This calculation, even when trebled to $312,000 pursuant to 15 U.S.C. § 1117(b), does not approach $1 million in damages. And, like the damages calculation in *Chanel*, it is "speculative and imprecise." 2011 WL 121700, at *9.

Nonetheless, Plaintiff has done more than "calculat[e] the potential gross sales revenue of defendant's entire inventory," which this Court concluded was "too speculative and imprecise to be credited." *See id.* Given that Plaintiff has attempted to estimate its lost profits and, significantly, that Defendants willfully infringed and then refused to participate in this lawsuit for the Court to have any actual figures on which to base its damages calculation, I will accept Plaintiff's measure of damages, and I will treble it for a statutory damages award of $312,000. This significant amount, while not the maximum statutory award possible, nonetheless should compensate Plaintiff while punishing and deterring Defendants and deterring others from similar conduct. *See Kobe*, 2014 WL 6608967, at *6; *Illinois Tool Works*, 817 F. Supp. 2d at 1356; *Chanel*, 2011 WL 121700, at *8–13.

## II. Attorney's Fees and Costs

Plaintiff is entitled to reasonable attorney's fees and costs from Defendants pursuant to 15 U.S.C. § 1117(a). In calculating an award of attorney's fees, the Court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation" and the matter is "essentially" factual. *Thompson v. HUD*, No. MGJ-95-309, 2002 WL 31777631, at *6 n.18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill*, 790 F.2d 1071, 1078–79 (4th Cir. 1986)).

Here, Plaintiff seeks an award of $18,530 in attorney's fees, $2,302.79 in costs and expenses, plus an additional $1,500 in fees for filing a Motion for Attorneys' Fees, for a total

award of $22,332.79.[1]  Pl.'s Mot. ¶¶ 8, 14. Plaintiff provides time and billing records that show that he billed 36.28 hours at $400 per hour on this case.  Cahn Aff. ¶ 8, 9 & Ex. 1.  The records show that a law clerk expended 35.25 hours on the litigation and a paralegal spent just under five hours, both billing at a rate of $100 per hour. Appendix B to this Court's Local Rules, Rules and Guidance for Determining Attorneys' Fees in Certain Cases, states that attorneys admitted to the bar for twenty years or more may bill $300–475 per hour.  Loc. R. App'x B, at 3.  It also provides that law clerks and paralegals may bill $95-150 per hour. *Id.*

Plaintiff's counsel, Maurice U. Cahn, has been a member of the Maryland bar since 1982, a period of more than 35 years.  Cahn Aff. ¶ 2.  Therefore, his proposed rate of $400 per hour is reasonable.  The proposed rate of $100 per hour for the work done by the law clerk and the paralegal also is reasonable.  Additionally, 76.53 hours is a reasonable amount of time to spend investigating Plaintiff's claims, exhausting administrative remedies, serving Defendants, drafting pleadings, communicating with Plaintiff, and moving for default judgment.  *See* Pl.'s Mot. 8; Cahn Aff. Ex. 1.  Therefore, I find that $18,530.00, plus $1,500.00 for the attorney's fees motion, is reasonable under the Local Rules Guidelines.  *See* Loc. R. App'x B, at 1; *Grissom*, 549 F.3d at 320.

Finally, Appendix B provides that "[g]enerally, reasonable out-of-pocket expenses . . . are compensable at actual cost."  Loc. R. App'x B, at 4.  Here, Plaintiff seeks reimbursement of $2,302.79 in expenses for filing fees, court fees, overnight shipping charges, and computerized

---

[1] Although Paragraph 9 of its supporting affidavit states that the attorney's fees (excluding those for the Motion for Attorneys' Fees) are $18,527.34, *see* Cahn Aff. ¶ 9, Exhibit 1 to the affidavit lists all individual charges, which total $18,530.00, the amount indicated in Plaintiff's Motion and Paragraph 8 of the supporting affidavit.  Thus, it is apparent that Plaintiff seeks $18,530.00 in attorney's fees, plus $1,500 for filing the Motion for Attorneys' Fees.  Additionally, the total award Plaintiff seeks, $22,330.03, is neither the total of $18,530, $2,302.79, and $1,500 (which total $22,332.79), nor $18,527.34, $2,302.79, and $1,500 (which total $22,330.13).  I will construe the request to be for the actual total of the fees and costs sought, that is, $22,332.79.

8

online research. Cahn Aff. Ex. 1. These are reasonable out-of-pocket expenses that can be compensated at actual cost. *See* Loc. R. App'x B, at 4. Having reviewed Plaintiff's memorandum, the attached affidavit, and counsel's time and billing records, I find Plaintiff's attorney's fees and expenses reasonable.

## **ORDER**

Accordingly, it is, this 10th day of July, 2017, hereby ORDERED that

1. Statutory damages of $312,000 ARE AWARDED to Plaintiff pursuant to 15 U.S.C. § 1117(c)(2).

2. Plaintiff's Motion for Attorney's Fees, ECF No. 16, IS GRANTED;

3. Attorney's fees of $20,030.00 and $2,302.79 in costs ARE AWARDED to Plaintiff; and

4. The Clerk SHALL CLOSE this case.

/S/
Paul W. Grimm
United States District Judge